STATE of Missouri, Plaintiff–Respondent,

v.

Richard D. ALLRED, Defendant–Appellant.

No. SD 29963.

Missouri Court of Appeals, Southern District, Division Two.

April 1, 2011.

---

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Atty. General, James B. Farnsworth, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Richard D. Allred ("Appellant") was convicted, following a jury trial, of one count of murder in the second degree [1] and one

1. Murder in the second degree is a violation of section 565.021. All references to statutes are to RSMo 2000, unless otherwise specified.

count of armed criminal action[2] for the murder of his wife, Jamie Allred. Appellant was sentenced to life imprisonment on the murder charge, and fifty years on the armed criminal action charge. Appellant contends the trial court: (1) erred by overruling his objection to testimony of a police officer about two statements he made to the officer because the statements were obtained without Appellant being given a *Miranda*[3] warning while Appellant was in custody and being interrogated; and (2) plainly erred by instructing the jury improperly regarding self-defense because the instruction did not comply with MAI–CR3d 306.06A or section 563.031, RSMo Cum.Supp.2007. We find no error and affirm the convictions.

Appellant does not challenge the sufficiency of the evidence to sustain his convictions. Therefore, on appeal, we consider the facts and reasonable inferences derived therefrom in the light most favorable to the verdicts, and reject all contrary evidence and inferences. *State v. Newberry*, 157 S.W.3d 387, 390 (Mo.App. S.D.2005). In that light, the following evidence was adduced at trial.

On September 14, 2007, the 911 dispatcher received a call from a male who stated "I just murdered my wife and myself." Police and emergency personnel responded to the scene, but Jamie[4] was dead by the time they arrived. Appellant was lying on the living room floor, a few feet away from Jamie's body. Medical personnel began treating Appellant's injuries. Appellant initially resisted treatment, telling the emergency responders to leave him alone because he wanted to die.

As the medics were bandaging Appellant's neck, Appellant pushed them away, in an attempt to resist treatment, so the officers restrained him.[5] At some point after arriving at the house, the police learned that Appellant and Jamie had an infant child. The officers searched the house, but were unable to locate the infant. Police officer Chris Welsh asked Appellant where the infant was. Appellant told Officer Welsh the baby was with the grandparents and told the officer the phone number.

Officer Welsh then asked Appellant what happened and testified that Appellant responded that Jamie "had been running around on him, the drugs, the stealing, the staying out all night." As Appellant was being wheeled to an ambulance, after being tended to inside for ten to fifteen minutes, the officer again asked what happened. Appellant answered that Jamie "wouldn't stay off the drugs." Appellant was taken to a hospital and rushed into surgery.

Appellant had stabbed Jamie in the chest at least six times and slit her throat. Because there was no blood spray apparent at the scene, the medical examiner concluded that Jamie's throat was probably cut after she had suffered extreme blood loss from being stabbed. The police also determined that Appellant cut his wrist and neck after he inflicted the injuries on Jamie due to the blood tracking in the house; they also noticed that the three cuts on Appellant's chest were not life threatening.

---

2. Armed criminal action is a violation of section 571.015.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At times, we refer to Jamie by her first name for purposes of clarity, no disrespect is intended.

5. The restraining process included securing Appellant's right hand in a clamp.

The day after the murder, two detectives went to the hospital and advised Appellant of his *Miranda* rights. Appellant waived his *Miranda* rights and, when asked if he wanted to speak about the incident, told the detectives "I know what I did was wrong."

At trial, Appellant's defense was self-defense. He claimed that Jamie was the initial aggressor and had stabbed him in the chest first, so he knocked her away, pulled the knife out of his chest, stabbed her with it, and cut her throat. The jury was instructed on self-defense; however, Appellant was convicted of murder in the second degree and armed criminal action. This appeal followed. Additional pertinent facts are included below as we address Appellant's two points of error.

## Point I—Miranda Violation

Appellant filed a motion to suppress statements he made to Officer Welsh, among others, claiming admission of those statements would violate his Fifth Amendment rights. The trial court overruled the motion after a hearing on the motion. Appellant renewed his motion to suppress at trial and objected to Officer Welsh's testimony regarding the statements.

In his first point, Appellant contends the statements he made after the officers questioned him were obtained in violation of his constitutional rights because he was in custody, under an interrogation, and they were made before he was informed of his *Miranda* rights. Officer Welsh asked Appellant what happened on two separate occasions. The first instance was while Appellant was struggling against medical care and after he had told the officer where the minor child was. Appellant's first response was that his wife

"had been running around on him, the drugs, the stealing, the staying out all night." The second instance occurred while Appellant was being wheeled to the ambulance and again was asked what happened; he answered that Jamie "wouldn't stay off the drugs." There is no question that Appellant was not advised of any *Miranda* rights.

## Standard of Review

As Appellant's argument that the challenged statements were obtained in violation of his Fifth Amendment rights is properly preserved, the evidence presented both at trial and the hearing on the motion to suppress are considered on appeal. *State v. Reed,* 157 S.W.3d 353, 356 (Mo.App. W.D.2005). We review a trial court's ruling on a motion to suppress to determine whether there was substantial evidence to support the decision. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). We view the evidence in the light most favorable to the ruling. *State v. Newberry,* 157 S.W.3d 387, 397 (Mo.App. S.D.2005). We defer to the trial court's determinations of credibility and findings of fact, but review the court's conclusions of law de novo. *Id.* (citing *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998)). We will reverse a trial court's ruling on a motion to suppress if the decision is clearly erroneous, and we are left with a definite and firm impression that a mistake has been made. *Newberry,* 157 S.W.3d at 397–98.

Although *Miranda* triggers certain requirements,[6] the suspect must be subjected to a custodial interrogation. Questions that are part of a preliminary investigation do not come within *Miranda.* "A person who is being asked preliminary, investigatory questions by police officers is

---

**6.** That a suspect has a right to remain silent, that any statement made can be used as evidence against him, and that he has a right to the presence of an attorney, retained or appointed. *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602.

not in custody." *State v. Dye,* 946 S.W.2d 783, 786 (Mo.App. E.D.1997). In *Miranda,* the Supreme Court of the United States qualified its watershed opinion this way:

> Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

*Miranda,* 384 U.S. at 477–78, 86 S.Ct. 1602 (internal citations omitted).

Here, Appellant's two statements were in response to Officer Welsh asking "what happened." Clearly, Officer Welsh's question was a preliminary investigatory inquiry. The information available to the officer was that someone had called the 911 dispatcher and claimed to have killed his wife and was about to kill himself. The officer had no way to know for certain that the caller was Appellant; he was simply responding to the 911 call. It would have been irresponsible police behavior to not ask "what happened" of a person who was bleeding at the scene of what appeared to be a violent murder. It was especially important to ascertain "what happened" when the police determined that an infant child also resided in the home. *See State v. Middleton,* 854 S.W.2d 504, 507, 511 (Mo.App. W.D.1993) (In dicta, the court explained that officer's question to defendant about what happened at house where defendant's wife was shot was the type of on-the-scene investigation that did not give rise to *Miranda* requirements.); *c.f. Commonwealth v. Smith,* 35 Mass.App.Ct. 655, 624 N.E.2d 604, 606 (1993) (where officer's question about what happened to defendant's damaged car shortly after a hit and run accident involving a vehicle that matched the car that the defendant was driving did not trigger *Miranda* because some preliminary questions are permissible to enable the police to orient themselves).

Furthermore, other evidence presented at trial, including Appellant's own testimony, was cumulative evidence as to the content of the statements. The statements Appellant sought to suppress were that his wife: (1) "had been running around on him, the drugs, the stealing, the staying out all night";[7] and (2) "wouldn't stay off the drugs." Appellant testified that he and Jamie had an argument. Police involvement in this case began when Appellant called 911 and told the dispatcher, "I just murdered my wife and myself." In his own testimony, Appellant stated that he was concerned about Jamie's "running around," drug use, and dishonesty. Where the content of challenged statements made by a defendant is cumulative to other evidence, including his own testimony, there is no prejudice and no reversible error; any error in the admission of the statements is harmless beyond a reasonable doubt. *State v. Lopez,* 128 S.W.3d 195, 202 (Mo.App. S.D.2004).

In light of the cumulative nature of evidence introduced by the State, and Appellant's own testimony, we find that if there was any error in admitting the statements, it was harmless beyond a reasonable doubt. Point I is denied.

### Point II—Instructional Error

■ At trial, Appellant testified that he "hit" his wife with a knife after she had stabbed him in the chest with the knife.

---

7. At the motion to suppress hearing Officer Welsh testified that Appellant also said he "couldn't take it anymore." The prosecutor alluded to the "I couldn't take it anymore" statement in his opening statement.

In his second point, Appellant contends that the trial court "plainly erred in giving the self-defense instruction (Instruction No. 10) in an improper form and not *sua sponte* modifying it." At the instruction conference, defense counsel did not object to Instruction No. 10 being given to the jury. Our review, therefore, is for plain error.

In reviewing for plain error, we first determine whether the record discloses a facial basis for concluding that evident, obvious, and clear error has occurred. *State v. Green*, 307 S.W.3d 197, 201 (Mo.App. S.D.2010). If we determine that facial basis, we review it to determine if, as a result of that facial error, Appellant suffered a manifest injustice. *Id.* "Instructional error rarely rises to the level of plain error." *State v. Hall*, 321 S.W.3d 453, 457 (Mo.App. S.D.2010). For instructional error to reach the level of plain error, "the defendant must show that the court 'so misdirected or failed to instruct the jury' that the error affected the jury's verdict." *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008)).

Appellant argues that the self-defense instruction given failed to comply with MAI–CR 3d 306.06A because it failed to include language noting that Appellant could use deadly force if he reasonably believed it was necessary to protect himself from the commission of "any forcible felony." Section 563.031.2(1), RSMo Cum. Supp.2007. Appellant claims that the instruction given was wrong because it included the language "the imminent use of unlawful force" without including the phrase "or commission of a forcible felony."[8] Appellant argues that in each instance where the instruction identifies circumstances in which force, or deadly force, could be justified, the instruction should have included the "forcible felony" alternative. Appellant argues that the trial court was obligated to *sua sponte* modify the instruction.

We find there was no obvious, evident or clear error warranting plain error review. Missouri Approved Instruction MAI–CR3d 306.06A authorizes the court, in instructing on the issue of self-defense, to choose from several alternative phrases as the facts of the case require. The trial court instructed the jury that Appellant was lawfully entitled to use force in self-defense if he reasonably believed such force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force. The jury was told that Appellant must have reasonably believed that force was necessary to protect himself from death or serious physical injury. Appellant's theory was that Jamie had initially stabbed him with the knife; his theory of unlawful force was properly presented to the jury in the instruction. Pursuant to the instruction's notes on use, when the alleged "forcible felony" is assault, the court may simply choose to use the "use or imminent use of unlawful force" language. MAI–CR3d 306.06A, Notes on Use 6. The court used that language in Instruction No. 10. The jury was in no way misdirected. The trial court did not commit error, plain or otherwise, in the self-defense instruction. Point II is denied.

The judgment is affirmed.

SCOTT, C.J., FRANCIS, J., concur.

---

8. "Forcible felony" is defined as "any felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, assault, and any forcible sexual offense[.]" Section 563.011(3), RSMo Cum.Supp.2007.