

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99226 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Thomas J. Frawley |
| MONIQUE BANKS, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: May 27, 2014 |

**Introduction**

Monique Banks (Defendant) appeals the Circuit Court of St. Louis City's judgment of conviction entered after a jury found Defendant guilty of first-degree assault and armed criminal action. Defendant claims the trial court erred by: (1) submitting a defense of others instruction that omitted "from the acts" of the victim and failed to include any reference to multiple assailants; and (2) permitting cumulative and prejudicial testimony of the victim's injury to which Defendant was willing to stipulate. We affirm.

## Factual Background

In the early morning hours of March 23, 2010, a melee arose involving Jessica Taylor (victim), Shameka Carpenter, Tamika Stewart, Defendant (who is Tamika's mother), and others, during which the victim suffered a serious physical injury. The State presented evidence that Tamika, Defendant, and a few other individuals went to the victim's apartment and knocked loudly on her door. Tamika and Defendant allegedly wanted to confront the victim regarding a burglary at Tamika's apartment, which was in the same building as the victim's unit. According to the State's evidence, when the victim opened her door, she saw her friend Shameka already involved in a scuffle with Tamika's group and the group then charged the victim. As the victim and Tamika fought with their fists, Defendant allegedly jumped over several people and struck the victim three times with a wooden furniture leg from which a piece of metal protruded. The victim heard her skull crack on the third impact.

Comparatively, Defendant testified that she left the victim's apartment after a non-physical confrontation about the burglary, but returned when she heard a commotion from the building. Defendant went to Tamika's apartment to ensure Tamika was safe and, upon entering Tamika's unit, she allegedly saw Tamika on the floor as a group of 11 or 12 people punched and kicked Tamika. Defendant tried to pull people off Tamika, started swinging and punching at people, and placed herself over Tamika to protect her. Defendant allegedly saw a woman with a knife and closed her eyes. The fight stopped when Defendant heard sirens.

The victim suffered a traumatic brain injury as a result of the blows to her head, which required surgery to remove fragments of bone and a titanium plate to cover the wound. Defendant was charged with first-degree assault and armed criminal action. Regarding the first-degree assault charge, the trial court instructed the jury on "defense of others." The jury returned a guilty verdict for both charges and, during the penalty phase, recommended a sentence of 10 years' imprisonment. The trial court sentenced Defendant to concurrent terms of 10 years' imprisonment for her first-degree assault conviction and 3 years' imprisonment for her armed criminal action conviction. This appeal followed.

**Standard of Review**

Defendant's first point raises a claim of instructional error. To preserve a claim of instructional error, counsel must make specific objections to the allegedly erroneous instruction at trial and in a motion for new trial. *State v. Mangum*, 390 S.W.3d 853, 860 (Mo. App. E.D. 2013). However, an unpreserved claim of instructional error may be reviewed for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error. *Id.* at 860-61. A defendant waives plain error review of instructional claims when the defendant proffers the instruction that the trial court submits to the jury. *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012).

Defendant's second point relates to the trial court's evidentiary decision. We review the trial court's decision to admit evidence for an abuse of discretion. *State v. Durham*, 371 S.W.3d 30, 34 (Mo. App. E.D. 2012). "We will affirm the trial court's judgment unless the trial court's ruling is clearly against the logic of the circumstances,

indicates a lack of careful consideration, and the error was so prejudicial so as to deprive the defendant of a fair trial." *Id*.

## Discussion

### 1. *Jury Instruction on Defense of Others*

In her first point, Defendant asserts that the trial court plainly erred by submitting Instruction No. 12, the "defense of others" instruction, because: (1) the instruction omitted "from the acts" of the victim; and (2) failed to include any reference to multiple assailants. According to Defendant, these material defects misdirected the jury's verdict and relieved the State of its burden to disprove the defense. The State responds that no plain error occurred because the trial court provided an instruction in conformity with the one Defendant proffered and that no miscarriage of justice occurred because the evidence overwhelmingly ruled out Defendant's defense of others theory.

At the instruction conference, Defendant proffered the defense of others instruction, patterned after Missouri Approved Instruction-Criminal (MAI-CR) 306.08, to the trial court. The State responded that the proffered instruction was incorrect, given that the MAI-CR had been revised and the applicable instruction for defense of others was MAI-CR 3d 306.08A. Instead of revising the instruction during conference, Defendant and the State agreed to each proffer a proposed defense of others instruction consistent with MAI-CR 3d 306.08A for the court's consideration. When the proceedings continued the following day, the trial court indicated that it would submit the State's instruction because it followed the language of the MAI-CR 3d 306.08A, while

4

Defendant's proposed instruction did not.[1]  Neither the State's nor Defendant's proposed

instruction included reference to multiple assailants.

Accordingly, Instruction No. 12, as submitted to the jury, stated in pertinent part:

One of the issues in this case is whether the use of force by the defendant against [the victim] was lawful.  In this state, the use of force to protect another person is lawful in certain situation [sic].

In order for a person lawfully to use non-deadly force in defense of another person, such a defender must reasonably believe such force is necessary to defend the person he is trying to protect from what he reasonably believes to be the use of unlawful force.

But, a person acting in the defense of another person is not permitted to use deadly force unless he reasonably believes the use of deadly force is necessary to protect the person against death or other serious physical injury.  As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief.  This depends upon how the facts reasonably appeared.  It does not depend on whether the believe [sic] turned out to be true or false.

On the issue of the defense of another person in this case, you are instructed as follows:

First, if, under the circumstances as the defendant reasonably believed them to be, Tamika Stewart was not the initial aggressor in the encounter with [the victim], and

Second[,] if the defendant reasonably believed that the use of force was necessary to defend Tamika Stewart from what the defendant reasonably believed to be use of unlawful force, and

---

[1] A review of Defendant's rejected instruction shows that it conformed to MAI-CR 3d 306.08A, but did not include an applicable optional paragraph that the State's instruction included.

5

Third, if she used only such non-deadly force as reasonably appeared to be necessary to defend Tamika Stewart,

Then her use of force is justifiable and she acted in lawful defense of another person, or if

Fourth, the defendant reasonably believed that that [sic] use of deadly force was necessary to protect Tamika Stewart from death or serious physical injury [*from the acts*] of [the victim], then her use of deadly force is justifiable and he [sic] acted in lawful defense of another person. (Emphasis added, to indicate omitted language.)

Defendant did not object to Instruction No. 12 on the grounds that the instruction omitted "from the acts" of the victim or failed to include reference to Defendant's defense of Tamika against multiple assailants. Therefore, Defendant requests that we review her claim for plain error.

We first consider Defendant's assertion that Instruction No. 12 erroneously omitted the phrase "from the acts." The MAI clearly contains this language and its omission appears to be a typographical mistake. However, in the argument portion of her brief, Defendant does not explain, beyond a recitation of the relevant facts and a single-sentence conclusory allegation, why this error affected the jury's verdict. Nor does Defendant cite to any relevant supporting authority. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *State v. Edwards*, 280 S.W.3d 184, 190 (Mo. App. E.D. 2009) (citation and quotations omitted). If a defendant fails to support a contention raised in the point with relevant authority or arguments beyond conclusion, then the claim is considered abandoned. *Id*. Accordingly, we conclude that Defendant has abandoned this argument and we decline to review it.

Regarding Instruction No. 12's failure to include reference to multiple assailants, we believe, as the State asserts, that *State v. Bolden*, 371 S.W.3d at 802, controls the resolution of this claim. In *Bolden*, the Supreme Court held that a trial court is not required to *sua sponte* correct an erroneous instruction that the party claiming error proffered and which was ultimately provided to the jury. *Id.* at 806. The Court explained that it is invited error for a party to proffer an incorrect instruction and then for that party, on appeal, to allege error based on the improper instruction it offered. *Id.* In such instances, the complaining party has waived plain error review of the instructional claim. *Id.*

While Defendant correctly points out that Defendant in this case did not proffer the instruction that was ultimately submitted to the jury, as the defendant did in *Bolden*, this factual difference is immaterial. This is because Defendant's proposed instruction, had the trial court accepted it, contained the *same error* as the State's proffered instruction, *i.e.*, both proposed instructions referred to only the victim and not multiple assailants. Had the trial court rejected the State's instruction in favor of Defendant's instruction, the same issue would arise on appeal. Requesting the trial court to submit an instruction that contains the same alleged error that the defendant challenges on appeal, waives plain error review. *State v. Oudin*, 403 S.W.3d 693, 698 (Mo. App. W.D. 2013). Accordingly, we conclude that Defendant waived plain error review of this claim.

It follows that *State v. Beck*, 167 S.W.3d 767 (Mo. App. W.D. 2005), and *State v. Mangum*, 390 S.W.3d at 853, on which Defendant relies, are inapplicable. In *Beck*, this Court concluded that reversible plain error occurred because the trial court failed to

7

instruct the jury that it could consider the actions of multiple assailants in determining whether the defendant acted in self-defense, thereby relieving the State of its burden of proof. 167 S.W.3d at 785-90. Significantly, it was the defendant in *Beck* who proffered the erroneous instruction that was submitted to the jury. *Id*. at 773. In *Bolden*, 371 S.W.3d at 806, our Supreme Court overruled *Beck* to the extent it required a trial court to *sua sponte* correct an erroneous instruction the defendant proffered and clarified that in such instances plain error review is waived. Certainly, the present case is factually similar to *Beck*: The evidence here likewise supported a defense of others instruction that would take into account the actions of multiple assailants. Yet, to follow *Beck* would flout the Supreme Court's decision in *Bolden*. Because Defendant proposed an instruction that contained the error she now complains of on appeal, *Beck* does not support the application of plain error review.

*Mangum* also does not compel the application of plain error review in this case. In *Mangum*, this Court concluded that reversible plain error occurred because the trial court failed to instruct the jury that it could consider the acts of multiple assailants in determining whether the defendant was justified in using force to defend himself. 390 S.W.3d at 869. However, in *Mangum*, the defendant did not proffer the self-defense instruction he objected to on appeal and there is no indication that the defendant, like Defendant in the present case, proposed an instruction that contained the same error as the instruction ultimately provided to the jury. *See id*. at 861. Thus, unlike Defendant, the defendant in *Mangum* did not waive plain error review. Point denied.

8

## 2. *Testimony of "Serious Physical Injury"*

In her second point, Defendant asserts that the trial court abused its discretion by allowing cumulative testimony of two physicians pertaining to the victim's physical injury. According to Defendant, the prejudicial value of this testimony outweighed its probative value because Defendant was willing to stipulate that the victim had sustained "serious physical injury" and the testimony had a decisive effect on the jury's verdict. The State counters that the testimony of the medical experts was not cumulative because their testimony referred to different time frames, that the testimony was relevant to the element of "serious physical injury," and that Defendant's willingness to stipulate to the victim's "serious physical injury" is irrelevant.

At trial, the State carried the burden of establishing beyond a reasonable doubt all the elements of first-degree assault, including that the victim suffered a "serious physical injury." A "serious physical injury" is defined as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or a protracted loss or impairment of the function of any part of the body." § 565.002(6) RSMo (2000). To establish that the victim suffered a physical injury that caused "a protracted loss or impairment of the function of any part of the body," the State offered the expert testimony of Doctors Robert Poirer, Thy Huskey, and Sindhu Jacobs. After the admission of Poirer's testimony, Defendant objected to the admission of any further medical testimony from Huskey and Jacobs on the grounds that it would be cumulative and highly prejudicial. The trial court overruled the objection, but limited each expert's testimony to the "window of time" that he or she treated the victim.

9

On appeal, Defendant does not dispute the "logical relevance" of this evidence, which is evidence that "tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case." *State v. Mathews*, 33 S.W.3d 658, 661 (Mo. App. S.D. 2000). Instead, Defendant contends that the trial court abused its discretion by admitting this testimony because it is not "legally relevant," *i.e.*, it is prejudicial cumulative evidence since Defendant was willing to stipulate to the victim's injury. To be "legally relevant evidence," the probative value of the evidence must outweigh any detrimental effect, including "any unfair prejudice, cumulativeness, confusion of the issues, misleading the jury, undue delay or waste of time." *State v. Davis*, 318 S.W.3d 618, 640 (Mo. banc 2010). In order to be admissible, evidence must be both logically and legally relevant. *Id.*

Here, Poirer testified that he treated the victim in the emergency room. He described the injury and indicated that the victim was admitted for surgery, during which a neurosurgeon removed fragments of bone from the victim's brain and placed a titanium plate over the hole in the victim's skull. Poirer testified that a patient with the victim's type of injury could potentially have memory problems and difficulty with speaking and walking. Next, Huskey testified that he accepted the victim as a patient at an inpatient rehabilitation facility for traumatic brain injuries. Huskey testified that when the victim became his patient, she suffered from memory impairment and needed assistance walking, but that she spoke fluently and could move her extremities. Finally, Jacobs

10

testified that she assumed the victim's care the day before the victim's release from the inpatient rehabilitation facility and, thereafter, for nearly two years on an outpatient basis. Jacobs stated that over the course of her treatment, the victim continued to suffer from poor memory, poor balance, and headaches. Jacobs prescribed a cane to help the victim's balance and the victim's memory improved with the use of memory aids and calendars. However, according to Jacobs, improvements in patients with brain injuries like the victim's, "plateau" about two years after the injury.

Having reviewed the record, we disagree with Defendant's argument that Huskey's and Jacobs' testimony was cumulative of Poirer's testimony and, therefore, prejudicial because it inflamed and distracted the jury causing it to find Defendant guilty of first-degree assault rather than finding defense of others. Certainly, given the nature of the interrelationships between the doctors and their treatment of the victim's injury, some *de minimis* overlap between the testimonies occurred. However, each expert described the state of the victim's injuries during a separate time period, over the course of two years, in which he or she treated the victim. In each instance, then, the expert testified to a point in the victim's progression and treatment that the other did not. Accordingly, their testimonies were *not* simply additional duplicative evidence on the same point, as Defendant urges us to conclude.[2] *See State v. Allred*, 338 S.W.3d 375, 379 (Mo. App. S.D. 2011) (the same evidence offered in a different medium is cumulative evidence).

---

[2] To support her argument that the testimony is duplicative, Defendant relies on *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987) and *State v. Courter*, 793 S.W.2d 386, 390-91 (Mo. App. W.D. 1999), where the State sought to call the victim as a witness after it had introduced the victim's videotaped statement regarding the same events. Here, each expert testified to a different time period of the victim's recovery. Therefore, *Seever* and *Courter* do not compel a conclusion that the testimony in this case is cumulative.

Because the expert testimonies were *not* duplicative, the prejudicial effect Defendant complains of is not supported by the record. Moreover, while the testimonies pertaining to the victim's injury were upsetting, they were first-hand accounts of the victim's injury that arose from the crime and were probative. To the extent that any potential prejudice arose, it was not due to any alleged cumulative testimony of the same subject, but due to the nature and result of Defendant's criminal act. Thus, we agree with the State, that the separate testimony of each of the experts was logically and legally relevant to establish the nature and severity of the victim's injury, as well as her limited potential for recovery, and to aid the jury in its determination whether the victim had suffered a "protracted loss or impairment" of her brain. *See* § 565.002(6).

Nonetheless, Defendant asserts that prejudicial effect of this alleged duplicative testimony outweighed its probative value because Defendant was willing to stipulate that the victim suffered a serious injury. Defendant cites no authority for the proposition that a party's willingness to stipulate to an element of a crime is a factor to be weighed when considering whether the probative value of certain evidence outweighs its prejudicial effect.[3] Our case law clearly indicates otherwise, as this Court has stated, "The accused cannot use stipulation or admission to 'cut-off' the State's right to offer evidence." *State v. Black*, 748 S.W.2d 184, 187 (Mo. App. E.D. 1988) (citation and quotations omitted). Because Defendant cites no authority in support of her argument that a willingness to

---

[3] Defendant cites numerous cases that articulate general principles related to circumstances when stipulations are appropriate, but none of these cases support Defendant's argument. *See, e.g.*, *State v. Holmes*, 609 S.W.2d 132, 135 (Mo. banc 1980) (a Defendant cannot force the State to agree to proof by stipulation); *City of Jennings v. Division of Employment Security*, 943 S.W.2d 330, 335-36 (Mo. App. E.D. 1997) (stipulations are encouraged to promote judicial economy).

stipulate weighs against the admission of evidence, we consider this argument abandoned. *Edwards*, 280 S.W.3d at 190.

In sum, the challenged testimony was relevant to establish that the victim had suffered a serious physical injury. Because the probative value of this testimony was not outweighed by its prejudicial effect, the trial court was well within its discretion in admitting the testimony. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge

Lisa Van Amburg, P.J. and
Patricia L. Cohen., J. concur.