

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112437 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | Cause No. 20AB-CR00663-01 |
| | ) | |
| DERIC A. RUGEN, | ) | Honorable Craig E. Hellman |
| | ) | |
| Appellant. | ) | Filed: March 11, 2025 |

### Introduction

Deric Rugen ("Appellant") appeals from the judgment upon his conviction following a bench trial for felony abuse or neglect of a child and domestic assault in the second degree. Appellant argues the trial court erred in overruling his motions for judgment of acquittal on both charges. Appellant further argues the trial court erred in limiting questions about victim D.B.'s drug use, overruling Appellant's motion to exclude child victim P.P.'s hearsay statements, and allowing P.P's videotaped deposition testimony in violation of Appellant's right to confront witnesses.[1] We affirm the judgment of the trial court.

### Factual and Procedural History

---

[1] The personal identifying information of victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

1

Facts

Viewed in a light most favorable to the verdict, *see State v. Rothwell*, 689 S.W.3d 260, 266 (Mo. App. E.D. 2024), the evidence at trial was as follows.

D.B. lived in an apartment with P.P., her two-year-old daughter, and Appellant, her boyfriend. On the evening of Tuesday, January 7, 2020, Appellant arrived at the apartment. Appellant was very angry and agitated when he got home. D.B. was giving P.P. a bath, and P.P. seemed a little upset. Appellant asked D.B. to stop P.P. from crying, and then Appellant slapped P.P. with an open hand. Appellant hit P.P. a second time, and then attempted to hit P.P. a third time but instead hit D.B. Appellant struck P.P. three to five times.

Appellant yanked P.P. out of the bathtub by her arm and took her to the bedroom while continuing to hit her. D.B. followed Appellant and P.P. to the bedroom, where Appellant threw D.B. on the bed and choked her. Appellant laid on top of D.B. and pushed hard on her neck with both hands wrapped around her neck. D.B. was scared and could not breathe. P.P. was on the floor crying while Appellant choked D.B. Appellant stopped choking D.B., but they continued to fight. Appellant kicked P.P. while she was on the floor.

D.B. went to the living room, and P.P. kept crying. Appellant took P.P. to the bathroom and locked the door. D.B. could hear Appellant hitting P.P. and P.P. continuing to cry. Appellant exited the bathroom, and Appellant and D.B. continued fighting and yelling. Every time D.B. yelled at Appellant, Appellant hit P.P. and said, "That is what she gets for her mom mouthing off."

D.B. left the apartment alone to get things for dinner because Appellant would not let her have P.P. When D.B. returned, she found P.P. lying on the floor with a belt wrapped around her. D.B. took the belt off P.P. and hugged her. Anytime P.P. would cry throughout the rest of the evening, Appellant would take her to the bathroom.

The next morning, Wednesday, January 8, D.B. drove Appellant to work, and Appellant stated he was sorry and would not do it again. When Appellant returned home that evening, Appellant took P.P. to the bathroom anytime she would cry.

The morning after that, D.B. took Appellant to work, and Appellant again apologized, but D.B. knew Appellant was not going to stop. D.B. called her best friend, who told her to come to her place to get away. After arriving at her friend's apartment in Springfield, Missouri, D.B. went to the hospital to have P.P. examined. D.B. denied causing any injury to P.P. After P.P. was seen in the emergency room, she was taken to the Child Advocacy Center ("C.A.C.").

C.A.C. staff were not able to complete the interview with P.P. because she wanted to be with her mother and did not want to be alone. P.P. would not enter the room for an interview. D.B. had some bruising on her arm and leg and some scratches on her neck, which she attributed to Appellant. P.P. had bruising that covered her face. C.A.C. staff took photos of these bruises to reflect P.P.'s physical injuries on January 9, 2020. D.B. and P.P. did not return to the apartment.

Procedural History

The State charged Appellant, via information, with domestic assault in the second degree and the class B felony of abuse or neglect of a child.

*Section 491 Hearing*

Prior to trial, the State filed a motion to admit P.P.'s out-of-court statements about the abuse pursuant to Section 491.075, which allows certain otherwise inadmissible statements of children to be admitted as substantive evidence in criminal proceedings. The trial court held a hearing on the State's motion.

During the hearing, P.P.'s play therapist, L.S., testified she first met with P.P. in January 2020, shortly after the abuse occurred. L.S. explained that, during play therapy, L.S. plays with and talks to the child. The discussion is "non-directive" or led by the child, and if L.S. asks any

3

questions, they are open-ended. L.S.'s goal was to just let P.P. talk. During P.P.'s initial play therapy session, P.P. disclosed that Appellant hurt D.B.

In a play therapy session in March 2020, P.P. disclosed that Appellant hit her in the face and on the butt, and tied her up with a belt. L.S. asked P.P. how this made her feel, and P.P. said it made her feel scared.

P.P. and L.S. did not have their next play therapy session until roughly a year later, in March 2021, due to the COVID-19 pandemic. P.P., unprompted, asked L.S. if she remembered Appellant and that Appellant had hurt her. L.S. testified she had neither brought up Appellant nor asked P.P. about Appellant. P.P. made other statements about Appellant hitting her, tying her up with a belt, and locking her away from her mother. L.S. believed all of P.P.'s statements were organic.

L.S. testified that P.P. had suffered trauma. Based on L.S.'s continued therapy with P.P. and her training and experience, L.S. opined that P.P.'s testifying in front of Appellant would be traumatic for P.P. L.S. believed being in the same room with Appellant would be detrimental to P.P. She was "about to hit a major developmental milestone, and her brain is going to reprocess the trauma as is. But, seeing the person would cause trauma and regression in behavior." P.P. had stated she was afraid of Appellant and had demonstrated symptoms consistent with a child who had experienced trauma, such as nightmares, hiding constantly, and checking doors.

The trial court granted the State's motion to admit P.P.'s disclosures to L.S about Appellant's abuse of P.P. under Section 491.075. Regarding some of P.P.'s disclosures, the trial court found "the time, content, and circumstances of P.P.'s statements, to [L.S.], provide sufficient indicia of reliability to make the statements admissible if the child testifies at trial . . .."

4

The trial court also excluded, however, some of P.P.'s statements regarding D.B., such as "[Appellant] hurt my mommy" and "[Appellant] mean to me and mommy."

The State also moved to allow P.P. to testify at trial pursuant to Section 491.680, which permits child victims of certain crimes to testify via videotaped deposition at trial. Appellant objected that admission of P.P.'s testimony would violate Appellant's right to confrontation under the United States and Missouri Constitutions. The trial court overruled Appellant's objection and allowed P.P.'s videotaped deposition testimony at trial.

*Bench Trial*

P.P.'s Testimony

Again at trial, Appellant objected that the admission of P.P.'s videotaped deposition testimony pursuant to Section 491.680 would violate his confrontation rights. Appellant's counsel argued the right to confrontation in the Missouri Constitution is more restrictive than the United States Constitution and the admission of P.P.'s deposition testimony violated his client's "right to confront the accusers and therefore, is unconstitutional under both the federal and state, but specifically the Missouri State Constitution."

The State responded that it "followed the appropriate safeguards and requirements of [Section] 491.680." The State explained that Appellant was streamed the video and had the chance to confer with his attorney for cross-examination, and the courts have held that Section 491.680 is valid. The trial court overruled Appellant's objection and admitted the deposition testimony.

In her videotaped deposition presented at trial, P.P. testified, among other things, that Appellant choked her and D.B. She denied that anyone had told her what to say during her testimony or about Appellant. Appellant's trial counsel cross-examined P.P.

D.B.'s Drug Use

5

D.B. also testified at trial. She admitted snorting Percocet and smoking marijuana on the days on which Appellant assaulted D.B. and abused P.P. She denied her drug use impacted her ability to remember everything that happened. During cross-examination, Appellant's counsel asked, "Now, on Tuesday, you said you did Percocet and marijuana. Correct?" D.B. responded she had. Appellant's counsel then asked, "You did it again Wednesday, too. Correct?" D.B. answered affirmatively. Appellant's counsel then asked, "Now, at this time, you did Percocet and marijuana a lot. Yes?" The State objected based on its motion *in limine* to exclude prior drug use of any witness unless the drug use was at the time the offenses occurred. The trial court sustained the State's objection. Appellant's trial counsel then reaffirmed that D.B. did drugs on January 7 and 8, 2020, the dates of the offenses.

In Appellant's motion for new trial, Appellant argued the trial court erred in limiting Appellant's questioning of D.B. concerning her "habitual drug use" at or near the times in question.

<u>L.S.'s Testimony</u>

At trial, L.S., P.P.'s play therapist, testified pursuant to Section 491.075 that she performed "non-directive" interviews with P.P. starting in January 2020. During the interviews, P.P. disclosed that Appellant hit her, and she pointed to her head, back, and arms. P.P. also disclosed that Appellant choked her and locked her away. L.S. testified that P.P. was having nightmares and high levels of anxiety, and was always checking doors. Finally, L.S. believed P.P.'s statements, which she made consistently throughout the therapy sessions, were organic.

<u>Motions for Judgment of Acquittal</u>

At the close of the State's case-in-chief and again at the close of evidence, Appellant filed motions for judgment of acquittal on both counts. The trial court denied the motions. Ultimately, the trial court found Appellant guilty as charged. Appellant now appeals.

**Discussion**

Points I and IV

We consider Points I and IV together because both points challenge the trial court's denial of Appellant's motions for judgment of acquittal on the charge of felony abuse or neglect of a child.

In Point I, Appellant argues the trial court erred in denying his motion for judgment of acquittal because the State did not prove beyond a reasonable doubt that Appellant committed acts of physical abuse against P.P., in that no reliable evidence or testimony indicated that the injuries to P.P. were caused by Appellant. In Point IV, Appellant argues the trial court erred in denying his motion for judgment of acquittal because the State did not prove beyond a reasonable doubt that Appellant committed acts of physical abuse upon P.P., in that the initial acts of abuse alleged by D.B. could not have physically occurred in the manner and space described by D.B.

*Standard of Review*

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Shoemaker*, 675 S.W.3d 672, 677 (Mo. App. E.D. 2023) (quoting *State v. Sokolic*, 660 S.W.3d 54, 57 (Mo. App. E.D. 2023)). When reviewing the sufficiency of the evidence in a bench-tried criminal case, we apply the same standard as in a jury-tried case. *State v. Niederstadt*, 66 S.W.3d 12, 13 (Mo. banc 2002). "The appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could

7

have reasonably found the defendant guilty." *Shoemaker*, 675 S.W.3d at 677-78 (quoting

*Niederstadt*, 66 S.W.3d at 13-14). "The Court examines the evidence and inferences in the light

most favorable to the verdict, ignoring all contrary evidence and inferences." *Id.* at 678 (quoting

*Niederstadt*, 66 S.W.3d at 14). "As such, this Court will not weigh the evidence anew since 'the

fact-finder may believe all, some, or none of the testimony of a witness when considered with the

facts, circumstances and other testimony in the case.'" *State v. Freeman*, 269 S.W.3d 422, 425

(Mo. banc 2008) (quoting *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002)).

*Analysis*

A person commits the class B felony of abuse or neglect of a child if he knowingly

causes a child who is less than 18 years of age to suffer a serious emotional injury or serious

physical injury as a result of abuse or neglect. Sections 568.060.2; 568.060.5(1).[2]

Appellant concedes sufficient evidence proved that P.P. suffered serious physical injury.

His arguments are that there was insufficient evidence that he knowingly caused P.P.'s serious

physical injury and that the serious physical injury was a result of abuse or neglect. More

specifically, Appellant argues that the photographs of P.P.'s bruising and P.P.'s medical records

admitted at trial fail to prove abuse or that Appellant was the one who abused P.P. He also argues

that P.P.'s injuries could not have occurred in the manner described by D.B. according to expert

testimony he presented at trial.

Regarding Appellant's knowingly causing P.P.'s injury, a person acts knowingly "with

respect to a result of his or her conduct when he or she is aware that his or her conduct is

practically certain to cause that result." Section 562.016.3(2). "Because direct evidence of a

defendant's mental state rarely exists, circumstantial evidence is sufficient." *State v. McClain*,

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

685 S.W.3d 35, 39 (Mo. App. E.D. 2024) (quoting *State v. Meyers*, 333 S.W.3d 39, 48 (Mo.

App. W.D. 2010)). "The defendant's mental state may be determined from evidence of the

defendant's conduct before the act, from the act itself, and the defendant's subsequent conduct."

*Id.* (quoting *State v. Hineman*, 14 S.W.3d 924, 927-28 (Mo. banc 1999)).

As for whether P.P.'s injury was a result of abuse, "abuse" is defined as:

The infliction of physical, sexual, or mental injury against a child by any person eighteen years of age or older. For purposes of this section, abuse shall not include injury inflicted on a child by accidental means by a person with care, custody, or control of the child, or discipline of a child by a person with care, custody, or control of the child, including spanking, in a reasonable manner;

Section 568.060.1(1).

Appellant selectively attacks the photographic and record evidence admitted at trial while

ignoring the extensive testimony of D.B. about the abuse Appellant inflicted on P.P. That

testimony demonstrated Appellant repeatedly hit P.P., kicked P.P. while she was on the floor,

tied her up with a belt, and took her into the bathroom and beat her. Appellant responds that

D.B.'s testimony was untrustworthy because she used drugs at the times in question, and that it

was physically impossible that the abuse occurred in the bathroom as D.B. described.

Appellant's arguments, even if factually correct, fail to account for our standard of

review. This Court "will not weigh the evidence anew since 'the fact-finder may believe all,

some, or none of the testimony of a witness when considered with the facts, circumstances and

other testimony in the case.'" *Freeman*, 269 S.W.3d at 425 (quoting *Crawford*, 68 S.W.3d at

408). Quite simply, we defer to the trial court's assessment of witness credibility. *State v.

Brushwood*, 171 S.W.3d 143, 146 (Mo. App. W.D. 2005). This Court also "examines the

evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence

and inferences." *Shoemaker*, 675 S.W.3d at 678. Pursuant to this standard of review, sufficient

9

evidence supported the trial court's findings that Appellant committed the act of abuse of a child, and that the serious physical injury concededly suffered by P.P. resulted from Appellant's abuse.

Points I and IV are denied.

## Point II

In his second point, Appellant argues the trial court erred in denying his motion for judgment of acquittal of domestic assault in the second degree of victim D.B. Appellant argues the State did not prove beyond a reasonable doubt that he committed acts of physical abuse upon D.B. in that no reliable evidence or testimony indicated that the injuries observed on D.B. were caused by Appellant.

*Analysis*

"A person commits the offense of domestic assault in the second degree if the act involves a domestic victim, as the term 'domestic victim' is defined under section 565.002, and he or she: (1) Knowingly causes physical injury to such domestic victim by any means, including but not limited to . . . choking or strangulation." Section 565.073.1. "Physical injury" is defined as the "slight impairment of any function of the body or temporary loss of use of any part of the body." Section 556.061(36).

The Western District of this Court has previously held that "the act of breathing is a 'function of the body' under the current definition and that an individual who has had her ability to breathe restricted through the act of choking at the hand of another has suffered, at a minimum, a 'slight impairment of a[ ] function of the body' to satisfy the present definition of 'physical injury.'" *State v. Marley*, 598 S.W.3d 204, 209 (Mo. App. W.D. 2020).

D.B.'s trial testimony was that Appellant laid on top of D.B. and pushed really hard on her neck, with both hands wrapped around her neck, choking her. D.B. was scared and could not

10

breathe. D.B. had bruising on her arm and leg and scratches on her neck, and stated that Appellant caused those injuries.

Appellant insists that the evidence fails to show any injury consistent with choking and that the injuries to D.B. could have been caused in other, equally plausible ways. Again, Appellant would have us disregard our standard of review and the substantial evidence supporting the verdict. Viewed in the light most favorable to the verdict, *Rothwell*, 689 S.W.3d at 266, the evidence clearly supports the trial court's findings that Appellant committed an act of physical abuse upon D.B. and is guilty of domestic assault in the second degree.

Point II is denied.

<u>Point III</u>

In his third point, Appellant argues the trial court erred in limiting Appellant's questioning of victim D.B. concerning her drug use at or near the time in question.

*Standard of Review*

"The standard of review for the admission of evidence is abuse of discretion." *State v. Scott*, 676 S.W.3d 336, 340 (Mo. App. E.D. 2023). "A trial court has broad discretion in choosing to admit or deny evidence." *Id.* "An abuse of discretion is found when the decision to admit or exclude the challenged evidence is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* at 340-41 (quoting *State v. Barriner*, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006)).

*Analysis*

"As a general proposition, 'the credibility of witnesses is always a relevant issue in a lawsuit.'" *State v. Donovan*, 539 S.W.3d 57, 71 (Mo. App. E.D. 2017) (quoting *State v. Smith*, 996 S.W.2d 518, 521 (Mo. App. W.D. 1999)). "Anything that has the legitimate tendency of

11

throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness." *Id.* (quoting *State v. Strughold*, 973 S.W.2d 876, 891 (Mo. App. E.D. 1998)). "However, attacks on a witness's credibility in a criminal proceeding are subject to limitations, and not every attack will be permitted." *Id.* at 71. "Impeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity." *Id.*

Generally speaking, evidence of a witness's prior drug use is not admissible as evidence of the witness's prior bad acts or of her propensity to use drugs. *Childs v. State*, 314 S.W.3d 862, 867 (Mo. App. W.D. 2010). "Past drug use does not necessarily bear upon her reputation for truth and veracity." *Id.* That said, "the intoxication of a witness as of the time the events took place which are the subject of the witness's testimony . . . bears directly upon the ability of the witness to accurately describe those events." *Harris v. Jungerman*, 560 S.W.3d 549, 560 (Mo. App. W.D. 2018) (quoting *State v. Caston*, 509 S.W.2 39, 41 (Mo. Div. 1 1974)).

At issue here is Appellant's question to D.B., "Now, at this time, you did Percocet and marijuana a lot. Yes?" The State objected based upon its motion *in limine* to exclude evidence of past drug use, unless "the witness was potentially using illegal substances at the times of the alleged crimes such that it could impact their [sic] ability to accurately recall what happened." Appellant's only response to the objection was that his question did not go "too far." The State retorted that Appellant's counsel had already inquired, and D.B. had already admitted, that D.B. had snorted Percocet and smoked marijuana on the two days in question. The trial court then sustained the State's objection. Immediately thereafter, Appellant reaffirmed that D.B. had used drugs on the days in question.

The trial court did not abuse its discretion in sustaining the State's objection to Appellant's inquiring generally into D.B.'s habitual drug use "at this time," as opposed to specifically on the relevant dates. Defense counsel already had asked about D.B.'s drug use on the days on which the charged offenses occurred. This was permissible to challenge D.B.'s ability to accurately recall the events of those days. *Harris*, 560 S.W.3d at 560. The broader question of D.B.'s drug use "at this time" did not "bear directly upon the ability of the witness to accurately describe those events," *Harris*, 560 S.W.3d at 560, or "her reputation for truth and veracity." *Childs*, 314 S.W.3d at 867.

Point III is denied.

## Point V

In his fifth point, Appellant argues the trial court erred in overruling Appellant's motion to exclude hearsay statements of P.P. because there was insufficient evidence of the content and circumstances of the statements to provide sufficient indicia of reliability, and there was insufficient evidence to find that P.P. would suffer emotional or psychological trauma if required to testify in the presence of Appellant.[3]

### *Standard of Review*

We review a trial court's decision to admit testimony under Section 491.075 for abuse of discretion. *State v. Antle*, 670 S.W.3d 66, 71 (Mo. App. W.D. 2023). A trial court abuses its

---

[3] This point is multifarious in violation of Rule 84.04(d) because it "groups together multiple, independent claims rather than a single claim of error." *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021). "Generally, multifarious claims of error preserve nothing for appeal and are subject to dismissal." *Id.* We nonetheless choose to review the point *ex gratia* because it is readily understood. *Cedar Cnty. Comm'n v. Governor Michael Parson*, 661 S.W.3d 766, 772 (Mo. banc 2023).

discretion in admitting a child's out-of-court statements under Section 491.075 when its findings are not supported by substantial evidence in the record. *Id.*

*Analysis*

Section 491.075 provides:

1. A statement made by a child under the age of fourteen . . . relating to an offense under chapter . . . 568, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and . . . .
(2)(c) The child . . . is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child . . . unavailable as a witness at the time of the criminal proceeding.

"To determine the reliability of a child's out-of-court statements for purposes of Section 491.075, we look to the totality of the circumstances." *State v. Ragland*, 494 S.W.3d 613, 623 (Mo. App. E.D. 2016). "Several non-exclusive factors aid us in our analysis: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; (4) knowledge of subject matter unexpected of a child of similar age; (5) the lapse of time between when the acts occurred and when the victim reported them; and (6) the technique employed by the interviewer." *Id.* "In considering these factors, we assess only the evidence presented at the [Section] 491 Hearing." *Id.* "The unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* (quoting *State v. Lane*, 415 S.W.3d 740, 749 (Mo. App. S.D.2013)).

Appellant argues the trial court erred in admitting P.P.'s out-of-court statements under Section 491.075 because there was not sufficient evidence of reliability of P.P.'s statements and

14

that P.P. would suffer significant emotional or psychological trauma as a result of testifying in person at trial. We conclude sufficient indicia of reliability supported the admission of P.P.'s statements.

First, P.P.'s statements that Appellant had hurt her were spontaneous while she was playing with L.S., her play therapist. Specifically, P.P. stated that Appellant slapped her a lot, slapped her mouth, and spanked her butt. P.P.'s statements about the abuse also remained consistent. After roughly a year-long delay due to COVID, P.P., unprompted, asked L.S. if she remembered Appellant and that Appellant hurt her. These statements were not solicited by L.S. P.P. also stated that Appellant hit her, tied her up with a belt, and locked her away from her mother. L.S. believed all of P.P.'s statements were organic. L.S. testified that P.P. never acted like somebody told her to say something or like she was being coached.

Second, there was no evidence of a motive for P.P. to fabricate her statements, particularly considering that Appellant is not P.P.'s father and has no biological or custodial rights, and P.P. had not seen Appellant since she and D.B. left the apartment.

Third, P.P.'s disclosures and the language she used did not indicate that she was coached on what to say. P.P.'s statements that Appellant slapped her a lot, slapped her mouth, and spanked her butt seemed consistent with what a two-year-old child might say. L.S. testified that P.P. had "never acted like somebody told her to say something or like she's being coached."

Fourth, there was not a significant lapse of time between when the acts occurred and when P.P. reported them to L.S. L.S. indicated P.P. first disclosed the abuse in late March 2020, roughly two months after it occurred. *See, e.g., State v. Sprinkle*, 122 S.W.3d 652, 665 (Mo. App. W.D. 2003) (concluding "a nine to eleven month lapse of time between the occurrence of the

15

alleged abuse and the first time [victim] told anyone is not significant enough to make her statements unreliable").

Finally, L.S.'s interview technique also tends to support the reliability of P.P.'s statements. L.S. described the play therapy as "non-directive," meaning the child chooses the activities. L.S. does not ask the child any direct questions, and if any questions are asked, they are open-ended. Here, L.S. allowed P.P. to play, and then P.P. disclosed how Appellant abused her. L.S. and P.P. continued playing, and L.S. later asked how it made P.P. feel. P.P. told L.S. it made her scared. L.S.'s goal was to just let P.P. talk.

These factors and the totality of the circumstances support the trial court's conclusion that the time, content, and circumstances of P.P.'s statements to L.S. provided sufficient indicia of reliability to admit the statements at trial.

Appellant secondarily argues there was insufficient evidence that P.P. would suffer emotional or psychological trauma if required to testify in the presence of Appellant. Appellant points to a lack of expert testimony and directs us to a portion of the hearing transcript containing only a single reference to trauma.

Appellant's argument is belied by the record of the Section 491 hearing, which repeatedly references emotional and psychological trauma to P.P. First, L.S. testified, "based on [her] continued therapy with P.P. and [her] training and experience," that P.P.'s testifying in front of Appellant would be "traumatic" and "detrimental" to P.P. L.S. explained that P.P. was "about to hit a major developmental milestone, and her brain is going to reprocess the trauma as is." Seeing Appellant would cause trauma to P.P. and regression in her behavior. L.S. testified this was "already a concern" because P.P. had expressed fear of Appellant and displayed symptoms

16

consistent with a child who had experienced trauma, such as nightmares, hiding constantly, and checking doors.

Appellant nonetheless insists that the trial court's finding of significant emotional or psychological trauma was unsupported by expert testimony. Appellant accurately cites *State v. Sanders*, 126 S.W.3d 5, 15 (Mo. App. W.D. 2003), for the proposition that "there must be some expert testimony that serious emotional or psychological trauma would result if the victim were required to testify in the presence of the defendant unless the distress of the child victim is so evident that the trial court would be competent to determine the issue itself." *Id.* But Appellant omits that "such evidence need not come from a psychologist, psychiatrist, or physician; testimony by an experienced social worker or other person who is knowledgeable about such issues will suffice." *Id.*

L.S. is the recipient of a bachelor's degree in psychology and a master's degree in professional counseling. She is a licensed professional counselor supervisor and a registered play therapist supervisor. Her licensure required 3,000 hours of training and two years of experience with monthly supervision. Both certifications require annual continuing education. As a supervisor, L.S. trains other counselors and therapists. Pursuant to *Sanders*, L.S.'s testimony amounted to expert testimony that serious emotional or psychological trauma would result to P.P. if she were required to testify in Appellant's presence.[4] *See id.*

_____

[4] We observe that Section 491.075's requirements regarding the reliability of the child victim's statements and serious emotional or psychological trauma to the child victim leave counselors and therapists like L.S. with tremendous responsibilities in these cases. They must ensure the spontaneity of the child victim's statements and the neutrality of the technique employed in play therapy. They also are tasked with fairly and accurately assessing the child victim's mental state, lack of motive to fabricate, and age-appropriate knowledge, as well as the potential for trauma to the child victim. Trial courts bear the equally solemn obligations to make credibility determinations at Section 491 hearings, particularly considering that we defer to those determinations on appeal, *see Brushwood*, 171 S.W.3d at 146, and to assess the admissibility of

Thus, substantial evidence supports the trial court's conclusions that P.P.'s out-of-court statements to L.S. bore sufficient indicia of reliability, and that P.P. would suffer significant emotional or psychological trauma as a result of testifying in person at trial. The trial court did not abuse its discretion in admitting P.P.'s statements pursuant to Section 491.075.

Point V is denied.

Point VI

In his sixth and final point, Appellant argues the trial court erred in admitting P.P.'s videotaped deposition testimony at trial because the testimony violated Appellant's confrontation right under Article I, Section 18(a) of the Missouri Constitution.[5]

*Standard of Review*

"Typically, this Court reviews evidentiary rulings for an abuse of discretion." *State v. Smith*, 636 S.W.3d 576, 579 (Mo. banc 2022). "Whether a criminal defendant's rights were violated under the Confrontation Clause however, is a question of law this Court reviews *de novo*." *Id.* "Properly preserved confrontation clause violations are presumed prejudicial." *Id.* (quoting *State v. Justus*, 205 S.W.3d 872, 881 (Mo. banc 2006)).

*Analysis*

---

out-of-court statements pursuant to Section 491.075. We note here that the trial court carefully admitted some of P.P.'s out-of-court statements and excluded others.

[5] Appellant also appears to argue at page 72 of his brief that "the trial court did not make the required finding under [*Maryland v.*] *Craig* as required by *State v. Smith*, 636 S.W.3d 576 (Mo. banc 2022) or *In re: C.A.RA.*, 637 S.W.3d 50 (Mo. banc 2022). Therefore, the procedure was unconstitutional as applied to [Appellant]." Because Appellant failed to raise this distinct argument in his point relied on and did not otherwise develop it in his brief, it is abandoned and we do not consider it. *State v. Devore*, 669 S.W.3d 362, 370 (Mo. App. S.D. 2023); *State v. Banks*, 434 S.W.3d 100, 104 (Mo. App. E.D. 2014).

Appellant is correct insofar as Article I, Section 18(a) of the Missouri Constitution provides "that in criminal prosecutions the accused shall have the right . . . to meet witnesses against him face to face." But Article I, Section 18(b) goes on to provide a specific exception to the "face to face" requirement in Section 18(a):

> Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will fully protect the rights of personal confrontation and cross-examination of the witness by defendant, the state may take the deposition of such witness and either party may use the same at the trial . . . provided there has been substantial compliance with such orders.

More specifically, Section 491.680 sets forth the procedures for admitting videotaped deposition testimony of child victims in offenses under Chapter 568. Subsection 2 of Section 491.680 allows for the deposition testimony to be used as substantive evidence at trial so long as the trial court "finds, at a hearing, that significant emotional or psychological trauma to the child which would result from testifying in the personal presence of the defendant exists." Section 491.680.2. The videotaped deposition testimony "shall be admissible in lieu of the child's personal appearance and testimony at . . . trial." *Id*. Also, subsection 3 of Section 491.680 provides:

> Upon a finding of trauma as provided for in subsection 2 of this statute, the court may also exclude the defendant from the videotape deposition proceedings in which the child is to testify. Where any such order of exclusion is entered, the child shall not be excused as a witness until the defendant has had a reasonable opportunity to review the videotape deposition in private with his counsel and to consult with his counsel; and until his counsel has been afforded the opportunity to cross-examine the child following such review and consultation.

19

Section 491.680.3; *see also* Section 491.685.[6] Finally, subsection 4 of the statute states, "The court shall preside over the depositions, which shall be conducted in accordance with the rules of evidence applicable to criminal cases." Section 491.680.4.

The Supreme Court of Missouri squarely has held that the deposition procedures contained in Sections 491.680 and 491.685 satisfy Article I, Section 18(b) of the Missouri Constitution. *State v. Naucke*, 829 S.W.2d 445, 454-456 (Mo. banc 1992). The *Naucke* Court reasoned that "Section 18(b) is essentially an exception to the 'face to face' requirement of Section 18(a) so that, if the deposition taken under §§ 491.680 and 491.685 does not violate Section 18(b), then it does not violate the confrontation requirements of the Missouri Constitution." *Id.* at 455. The Court recognized the four requirements of Section 18(b) that: (1) the witness be within the state; (2) the witness be other than the defendant and his or her spouse; (3) the circuit court find that it is necessary to take the deposition in order to preserve testimony; and (4) the conditions under which the deposition is taken fully protect the rights of personal confrontation and cross-examination of the witness by the defendant. *Id*.

Here, P.P.'s deposition under Section 491.680 clearly met the first two requirements of Section 18(b), as P.P. was within the state and is not Appellant or his spouse.

"As to the third requirement, that the deposition 'be in order to preserve the testimony,' this phrase means that the deposition must be taken for the purpose of use where the witness is unavailable as opposed to being taken for discovery or impeachment." *Id.* The trial court held the

---

[6] Section 491.685 similarly allows the trial court, upon motion of the prosecuting attorney, to "exclude the defendant from any or all deposition proceedings at which the child is to testify. However, where any such order of exclusion is entered, the child shall not be excused as a witness until the defendant has had a reasonable opportunity to review the videotape recording in private with his counsel and to consult with his counsel; and until his counsel has been afforded the opportunity to cross-examine the child following such review and consultation."

requisite hearing under Section 491.680, where it received expert testimony from L.S. that P.P. "would suffer emotional and psychological trauma, which would make her unavailable as a witness." *Naucke*, 829 S.W.3d at 455. This procedure "specifically and precisely meets this third requirement." *Id.*

"The fourth requirement of Section 18(b) has two prongs." *Id.* The first prong is satisfied by compliance with Sections 491.680 and 491.685, "which require that the witness shall not be excused until the defendant has had a reasonable opportunity to review the videotape in private with his counsel and to consult with his counsel and until his counsel has been afforded the opportunity to cross-examine the witness following such review and consultation." *Id.* Appellant undisputedly had this opportunity, and his counsel cross-examined P.P.

The second prong requires a "determination of whether defendant's rights of confrontation have been violated." *Id.* Our Supreme Court in *Naucke* reasoned that Article I, Section 18(b) is "an exception to the face-to-face requirement of Section 18(a), so that, if the deposition taken under §§ 491.680 and 491.685 does not violate Section 18(b), then it does not violate the confrontation requirements of the Missouri Constitution." *Id.* at 455. The *Naucke* Court held that a defendant's right to confrontation in the Missouri Constitution is not violated by the procedures in Sections 491.680 and 491.685. *Id.* at 456. According to that binding precedent, the procedures here did not violate Appellant's right to confrontation.[7]

---

[7] Despite the right in Article I, Section 18(a) of the Missouri Constitution to "face to face" confrontation, the Supreme Court of Missouri has held, "The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *Smith*, 636 S.W.3d at 579 (quoting *Justus*, 205 S.W.3d at 878). The Court explained it has "consistently refused to apply the face-to-face language of Section 18(a) literally to exclude evidence admitted under hearsay exceptions, which were truly not 'face to face,'" and acknowledged "[s]uch an interpretation of Article I, Section 18(a), would indeed result in a major difference in the confrontation protection afforded by the Missouri Constitution as opposed to that afforded by the Sixth Amendment of the United States Constitution.'" *Naucke*,

21

Point VI is denied.

## Conclusion

We affirm the judgment of the trial court.

Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

---

829 S.W.2d at 454-55. Regardless, as we have explained, Section 18(b) provides an explicit exception to the confrontation right set forth in Section 18(a), and that exception applies here.